## STATE v. MARY ANN WILSON.

### (Filed 21 February, 1912.)

**1. Murder—Threats—Remarks—Evidence.**

Evidence of threats by the prisoner being tried for murder, made three days before the homicide, and of the remarks that brought them forth which are connected with the threats, are competent.

**2. Murder — Character Witnesses—Particular Traits—Cross-examination—Rights of Witness.**

It is competent on cross-examination of a witness for a female defendant being tried for murder, who has testified to her good character, to ask the witness as to the general reputation of the prisoner in regard to a particular trait of character, and the witness, himself, may say in what respects the character of the prisoner is good or bad, so as to give the truth of the matter in justice to himself.

**3. Murder—Character Witnesses—General Character—Chastity.**

It is competent for a character witness to be asked on cross-examination the general character for chastity of a female prisoner on trial for murder, but not as to specific acts of unchastity.

**4. Same—Harmless Error.**

Questions asked a character witness for the female prisoner on trial for murder as to her general character for chastity, which appears to have been unprejudicial, will not be held for reversible error.

**5. Expert Evidence—Knowledge of Witness.**

Where there is evidence that the deceased, whom the defendant is on trial for unlawfully killing, had heart trouble, and the witness is an expert physician and had observed and testified to the shock which was alleged to have produced the death, it is competent to ask him, "If a person was suffering from heart trouble would the chance of a fatal result by reason of such disease be increased or diminished from a shock such as you saw the deceased was suffering from when you visited him?"

**6. Murder—Evidence—Testimony Taken by Magistrate—Identification—Competency.**

Testimony of the deceased taken down by a magistrate before his death when the prisoner was being tried only for an

assault, signed by the deceased and after his death handed by this magistrate to another conducting the preliminary trial for murder, with direction that he hand it to the clerk of the Superior Court, is competent evidence upon the trial for murder in the Superior Court when identified by the magistrate who transcribed it, and is a sufficient compliance with Revisal, sec. 3205.

**7. Appeal and Error — Objections and Exceptions — Improper Remarks—Practice—Waiver.**

Exceptions to improper remarks of counsel in their argument to the jury when taken for the first time and permitted by the trial judge in stating the case on appeal, will not be considered on appeal, for such exceptions must be taken at the time, or they will be deemed as waived.

**8. Same—Prejudicial—Harmless Error.**

When, on a trial for murder, an attorney for the State bases a part of his argument on matters not in evidence, saying that the prisoner's character was such that people were afraid to testify against her, *Held*, that error, if any committed, and in the absence of objection at the time, is rendered harmless by an instruction that there was no evidence upon which the argument could be made, and that the jury should not consider it.

**9. Appeal and Error—Assignments—Brief.**

Assignments of error not appearing in appellant's brief are considered on appeal as abandoned. 140 N. C., Rule 34.

APPEAL by defendant from *Cline, J.,* at Fall Term, 1911, of CAMDEN.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*Attorney-General Bickett and Assistant Attorney-General T. H. Calvert for the State.*

*W. M. Bond and E. F. Aydlett for defendant.*

CLARK, C. J. The prisoner was convicted of murder in the second degree. It was in evidence that about three days before the homicide a remark was made to the prisoner, in response to which she made threats. The evidence of such threats was competent. *S. v. McKay,* 150 N. C., 813; *S. v. Stratford,* 149 N. C., 483. Evidence of the remark made to the prisoner which brought out the threat was admissible so far as it was connected with the threat. *S. v. Williams,* 68 N. C., 60.

Two witnesses for the prisoner testified that her reputation was good or very good. On cross-examination they were allowed to testify as to the general reputation of the prisoner as to a particular trait of character. In *S. v. Hairston,* 121 N. C., 582, the Court said: "A party *introducing a witness* as to character can only prove the general character of the person asked about. The witness, of his own motion, may say in what respect it is good or bad. He may have to do this in justice to himself—in other words, to tell the truth. As for instance, if the party spoken of had a general bad character for other things, the witness could not truthfully say it was bad, nor that it was good, without qualification; or the *opposite party may, on cross-examination,* test the witness by asking him as to what it is bad for, what it is good for," etc. That bad repute as to chastity may be shown, but not specific acts of unchastity. *S. v. Efler,* 85 N. C., 585.

In the present case the witness Morris was asked on cross-examination, "Is it not a fact that you heard people say she was a prostitute?" to which he replied, "Have heard talk of it, but her character is about as good as the average negro." The other witness, having said her character was good, was asked on cross-examination, "Have you not heard it frequently said that she was a common woman and a prostitute?" to which he replied, "Have heard it, but not frequently; heard it some few times." We do not think these exceptions can be sustained. The answers were not prejudicial, and indeed were not excepted to. These questions come fairly within the rule in *S. v. Hairston, supra,* which allows a cross-examination as to reputation of a particular trait, but not as to reputation of particular acts, which the State did not ask and which the replies do not give. If the reply could be held technically improper, we cannot see that it was prejudicial, or could have affected the verdict, and in such cases the tendency of all courts is against giving a new trial. It should reasonably appear that an error, if any, would have reasonably affected the result.

Dr. Sawyer, a witness of the State, was asked the following: "If a person were suffering from heart trouble, would the chance of a fatal result by reason of such disease be increased or dimin-

ished from a shock such as you saw Jim Morrisette was suffering from when you visited him?" The question objected to was based upon conditions of heart trouble about which the prisoner and her witnesses had testified and the shock which the witness himself had observed and testified to. It does not assume facts not in evidence, which is the ground of the appellant's exception.

The prisoner was first arrested on the charge of an assault, and was tried before the death of the deceased. The justice of the peace reduced the testimony of the deceased at such trial to writing and it was signed by the deceased. It was in evidence that this paper was delivered to the other justice of the peace on the preliminary trial before him of the prisoner for murder, with direction to deliver to the clerk of the Superior Court, and on the trial in the Superior Court the paper was identified by J. E. Cook, the justice of the peace, who took down the evidence on the first trial. This was a sufficient compliance with Revisal, 3205. *S. v. Wilson,* 24 Kansas, 189; *Hart v. State,* 15 Texas App., 202.

Assistant counsel for the State in his argument commented upon the character of the prisoner, saying that she was a bad woman and that people were afraid to testify against her. Upon objection by the prisoner, the court told counsel he could only argue the testimony to the jury, and that he recalled no evidence about people being afraid to testify against her and withdrew the remark from the jury and directed them not to consider such statement. It appears that no exception was noted at the time, but the court permitted an exception to be made in stating the case. This was too late. An exception not taken at the time is waived and the judge should not permit it to be made afterwards in settling the case. 2 Cyc., 714.

Besides, the objectionable remark of counsel was cured by the ruling of the court and the instruction to the jury to disregard it. *S. v. Peterson,* 149 N. C., 533; 4 A. and E. Enc., 450.

The other assignments of error do not appear in the brief of counsel for the prisoner and are held to be abandoned. Rule 34, 140 N. C.

No error.